202 P.2d 407

### STATE v. GLANZMAN.

No. 7468.

Supreme Court of Idaho.

Jan. 26, 1949.

Geo. H. van de Steeg, of Nampa, for appellant.

Robert E. Smylie, Atty. Gen., and J. R. Smead, Asst. Atty. Gen., for respondent.

GIVENS, Justice.

Appellant's appeal is from a conviction of the crime of driving a motor vehicle while under the influence of intoxicating liquor, alleged to have occurred at the southwest outskirts of Boise at the intersection of Highway 30 running east and west, and Orchard Avenue extending from the Highway south, on December 30, 1947.

Appellant assigns as error the insufficiency of the evidence to sustain the verdict; that it was error for the court to give Instruction No. 5 and refuse to give appellant's requested Instructions Nos. II and IV; that certain remarks of the trial court were prejudicial; and that four months in the County jail with eligibility to apply for a parole after serving sixty days, was excessive punishment.

■ The circumstances surrounding appellant's arrest and his then condition are substantially as follows:

Deputy Sheriff Jim Brunt testified that on the evening of December 30, 1947, he was in uniform and on his way to Franklin High School to direct traffic at a basketball game; that as he turned south on Orchard Avenue, he noticed a car coming toward him on his side of the road. He pulled out of the way of the car and started to go behind a truck that was parked across Orchard Avenue—which had caused the other car to be on the wrong side of the road—when the truck started to back up. The truck had no lights and was parked practically across the road and when it started to back up, Mr. Brunt put his car in reverse and yelled at the driver, who then pulled forward almost off the oiled part of the road. Mr. Brunt went up to the cab, opened the door and told the man to give him his keys; that he was in no condition to be driving a car, then he called for a State Officer to come to the scene because he wanted a witness to corroborate his opinion as to the man's condition, which was befuddled, and there was an odor of alcohol in the cab. Mr. Brunt testified, in his opinion, the odor was from beer. After Officer Bennett arrived, they told the man to get out of the cab and when he protested, they told him they would take him out. He was belligerent and Mr. Brunt told him he was in no condition to operate a truck, that he was intoxicated. Mr. Brunt testified the man was unsteady on his feet, could not control his movements and could not walk without assistance. The officers took the man to the Sheriff's office in Boise, then to jail. He would not give his name or produce his driver's license, and made some disturbance after he was placed in jail. No beer was found in the truck.

Officer Bennett testified that the officers asked the man two or three times to get out of the cab, and finally Mr. Bennett took him by the arm and he got out; that there was an odor of beer or whiskey or some alcoholic beverage when he helped the man out of the cab of the truck; that the man was kind of unsteady on his feet; that he couldn't stand still without leaning against something—he was kind of wobbly; that he resisted when they tried to look at his driver's license at the office and when they took him upstairs to his cell; that he kicked the bars and made a disturbance. Officer Bennett testified that in his opinion the man was intoxicated.

Appellant testified he had been in Boise, drove out Highway 30 and stopped at Rusty's Inn and parked his truck; had a bowl of chili and cup of coffee and was there about 20 minutes; got in his truck and started to back up and didn't notice a car back of him. Said he had had three bottles of beer to drink while he was in Boise—none at the Inn. Also said he arrived in Boise about 3:00 or 3:30 p. m. and was there two hours and at the Inn fifteen or twenty minutes, but the officers stated it was almost dark, around seven-fifteen when they stopped him. Later appellant said he had

three glasses of beer; that he was too badly fuddled up and didn't pay any attention to where the Sheriff's car was parked—he couldn't remember. He also testified there were several cars parked near the Inn, but the officers testified there were only two. Appellant's testimony was conflicting as to where he parked and how far he pulled up and back across the road.

These composite circumstances were sufficient to justify the verdict, even though reasonable minds might differ as to the conclusion to be drawn therefrom, and it was within the province of the jury to reach the conclusion they did. Grooms v. State, 77 Okl.Cr. 448, 142 P.2d 862.

The court quoted the statute on driving while under the influence of intoxicating liquor[1] and thus amplified it:

"To constitute this crime, it is not necessary that the driver of the motor vehicle be shown to have been in any particular degree or state of intoxication, but only that such driver at the time charged had consumed intoxicating liquor to such an extent as to influence or affect his driving of the motor vehicle."

"Whether or not the driver of the motor vehicle was under the influence of intoxicating liquor is a question of fact for the jury to determine under the facts and circumstances disclosed by the evidence." Instruction No. 5.

Appellant requested the following instruction:

"You are instructed that the expression 'under the influence of intoxicating liquor' means that a person is so mentally or physically affected by alcoholic beverages that his judgment or ability to operate a car is to some degree impaired; it means that degree of indulgence in intoxicating liquor that he is deprived by reason thereof of that clearness of intellect and control of himself which he would otherwise have. The burden is upon the State to establish beyond a reasonable doubt that the defendant in this case, at the time and place alleged in the information, was 'Under the influence of intoxicating liquor', as above defined, to that extent that he was so mentally or physically affected thereby that his judgment or ability to operate his car was impaired." Requested Instruction No. II.

Appellant argues that Packard v. O'Neil, 45 Idaho 427, 262 P. 881, 56 A.L.R. 317, supports his position. Therein the court under the 1921 statute[2] approved this instruction:

---

[1] "It shall be unlawful and punishable as provided in section 48-558 for any person whether licensed or not who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle upon any highway within this state." Section 48-502, I.C.A.

[2] "No vehicle shall be moved, run, or operated on the roads, streets, or highways of this state by any person unable to control and properly operate the same with due regard to the safety of the public and other vehicles; *Provided*, That in all cases any person in a state of intoxication is deemed conclusively to be unable to control and operate the same." Chap. 249, p. 539, 1921 S.L. Subd. 18.

"It is unlawful for any vehicle to be moved, run, or operated on the highways of this state by any person unable to control and properly operate the same with due regard to the safety of the public and other vehicles; and in all cases any person in a state of intoxication is deemed conclusively to be unable to control and operate the same. And if you find from the evidence that the defendant was, at the time of the accident, in a state of intoxication, then under the law he is conclusively deemed to have been unable to control and operate the automobile which he was driving."

The instruction was attacked on the ground there was no issue in the pleadings to warrant the instruction and that it was unconstitutional. While the court quoted with approval Huddy on Automobiles, which quotation contains the thought urged by the requested instruction herein, the present statute, Section 48-502, I.C.A. passed in 1927, does not connect the penalty of driving an automobile while under the influence of intoxicating liquor with the ability to control or operate the same as did the 1921 statute.

In Hasten v. State, 35 Ariz. 427, 280 P. 670, where the court was confronted with the exact conditions met herein, thus:

"It is appellant's claim that this means in effect 'under the influence of intoxicating liquor to the extent of impairing to an appreciable degree his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full posses- sion of his faculties and using reasonable care, would operate a similar vehicle under similar conditions.' It is the contention of the state, on the other hand, that the law means 'any influence of intoxicating liquor, however slight,' and the trial court instructed the jury on this latter theory."

The conclusions in the above case and approval of the instruction as given herein are pertinent as bearing upon the evident intent of the Legislature in thus changing the statute in 1927 and its conclusions are enlightening and persuasive.

"It is a truism that a person who is even to the slightest extent 'under the influence of liquor,' in the common and well-under- stood acceptation of the term, is to some de- gree at least less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mech- anism as a modern automobile with safety to himself and the public. With the in- creasing number and speed of automobiles on our highways, and the appalling number of accidents resulting therefrom, it is not strange that the lawmaking power deter- mined that any person, who of his own free will voluntarily lessened in the slightest de- gree his ability to handle such vehicles by the use of intoxicating liquor, should, while in such condition, be debarred from their use. The Legislature has placed no limita- tion on the extent of the influence required, nor can we add to their language.

"Nor will it follow, as appellant seems to fear, that every man who has taken a drink falls within the ban of the statute. If that drink does not cause him to be 'influenced' in the ordinary and well-understood meaning of the term, he is not affected by the law. If he is so influenced, he must bear the consequences of his voluntary act by refraining from driving an automobile while that influence lasts." Hasten v. State, supra.

A further analysis of the reasons why the instruction as given was sufficient is in Mc-Murry v. State, 28 Ala.App. 253, 184 So. 42:

. "This charge places too great a burden upon the State. Under Section 1397(50) of the Code of 1928 (Michie's Code 1928), it is unlawful for a person to drive any vehicle upon a public highway while under the influence of liquors or narcotics. If, while under the influence of liquor or narcotics, he drives the vehicle along the public highway, he would be guilty of a violation of the Statute. It is not for the State to prove that the intoxication had reached a stage where it would or did interfere with the proper operation of the motor vehicle. The law assumes, without further proof, that when a person is under the influence of intoxicating liquors that it is dangerous to the public, as well as to the driver, to operate a motor vehicle upon the highways of this State.

"The court in its oral charge fully instructed the jury as to the burden of proof, and in said charge, the court said: 'The State contends this defendant was operating a motor vehicle upon a public highway in this County. While so operating a motor vehicle he was under the influence of intoxicating liquors. The defendant admits that he was operating the motor vehicle but denies he was under the influence of intoxicating liquors. The State contends he was under the influence of intoxicating liquors, and the defendant contends he was not under the influence of intoxicating liquors. These are the contentions you must decide and decide from the evidence in the case.' And again the court said: 'As I told you the burden of proof is on the State to prove beyond a reasonable doubt that this defendant was under the influence of intoxicating liquors at the time in question.' And the court again said: 'In order for you to convict the defendant you must believe beyond a reasonable doubt from the evidence in the case the defendant was under the influence of intoxicating liquors.'

"As was said by this Court in Holley v. State, 25 Ala.App. 260–262, 144 So. 535, 537:

" 'Refused Charge 12 places a burden on the state not authorized by the statute. The question is not to what extent defendant was under the influence of liquor. The question is, Was he under the influence of liquor? The degree of intoxication may have its bearing on the severity of the punishment, but not on the question of guilt.'

"The Legislature of this State, recognizing the menace to the traveling public of motor vehicles on the public highways being driven by persons under the influence of intoxicating liquors or narcotics, passed the Statute as it now appears in the law. It would be placing too great a burden on the State to give to that Statute the interpretation insisted upon by the appellant."

The following cases likewise sustain the instruction as given and clearly demonstrate it was not error under our statute to refuse the requested instruction: State v. Taylor, 131 Me. 438, 163 A. 777; State v. Cormier, 141 Me. 307, 43 A.2d 819; Com. v. Bridges, 285 Mass. 572, 189 N.E. 616; Daniels v. State, 155 Tenn. 549, 296 S.W. 20; Stewart v. State, 108 Tex.Cr.R. 199, 299 S.W. 646, at page 648; State v. Storrs, 105 Vt. 180, 163 A. 560 [6–7]; Durham v. State, 166 Ga. 561, 144 S.E. 109; Chapman v. State, 40 Ga. 725, 151 S.E. 410 (2d case) #2; Lockhart v. State, 108 Tex.Cr.R. 597, 1 S.W.2d 894 [5–6] 3d exception; State v. O'Grady, 21 A.2d 864, 19 N.J.Misc. 559, citing State v. Rodgers, 91 N.J.L. 212, 102 A. 433 (2d case) [5]; State v. Hedding, 114 Vt. 212, 42 A.2d 438; Holley v. State, 25 Ala.App. 260, 144 So. 535; Wallace v. State, 44 Ga.App. 571, 162 S.E. 162 (2d case); Austin v. State, 47 Ga.App. 191, 170 S.E. 86.

The text of the remarks by the court (criticised by appellant) clearly show he was merely attempting to get appellant, when on the witness stand, to answer the questions without circumlocution and while it is better for the trial court not to threaten the defendant with disciplinary proceedings in the presence of the jury, the attitude of appellant, apparent to the learned trial judge and perforce not to us, may have indicated it was necessary to speak sharply to secure the attention of witness to the questions and responses thereto. In one instance appellant's own counsel had to admonish the appellant to answer the question.

The colloquy shows there was no prejudice.

"Q. All right, but now you say you got to Boise about three-thirty. Now, which is right?

"A. Well, what are you trying to get at?

"The Court: Just a minute. You answer the questions."

\*   \*   \*   \*   \*   \*

"Q. Do you know what time the Sheriff stopped you out there?

"A. Well, we have already made that statement.

"The Court: Just a minute, now; I want you to answer the questions without any argument."

\*   \*   \*   \*   \*   \*

"Q. Why do you say it was six-thirty, between six-thirty and seven when he stopped you?

"A. Well, do you want me to have a stop watch?

"Mr. Blaine: I asked you the question; now answer it.

"The Witness: What do you want to know?

"The Court: Just a minute. Do you want to go upstairs for contempt of Court? Now answer the questions.

"The Witness: I will answer the question.

"The Court: And without any argument."

\*    \*    \*    \*    \*    \*

"Q. And after you got out of the truck, what did you do? Where did you go?

"A. What?
(Pending question read.)

"A. Well, you know where I went.

"Mr. Van de Steeg: Well, answer the question.

"The Witness: What was that?

"The Court: Answer the question. I am not going to tell you again.

"The Witness: I didn't hear you.

"The Court: I said answer the questions. I am not going to tell you again about this argument."

The penalty for driving while under the influence of intoxicating liquor is not less than 30 days or more than six months in jail and/or by fine of not less than $100.00 or more than $300.00 and revocation of the driver's license. Section 48-558, I.C.A.

While no one was injured in connection with this offense, much must be left to the discretion of the trial judge in the imposition of a penalty and we cannot say that four months in the County jail with eligibility to apply for a parole after serving sixty days was so excessive that it should be set aside by us. State v. Kruger, 7 Idaho 178, 61 P. 463; State v. Farnsworth, 51 Idaho 768, 10 P.2d 295.

The judgment of conviction is, therefore, affirmed.

HOLDEN, C. J., PORTER and HYATT, JJ., and TAYLOR, District Judge, concur.