401 P.2d 824

**STATE of Idaho, Plaintiff-Respondent,**
**v.**
**Richard D. McFARLAND, Defendant-Appellant.**
**No. 9577.**

Supreme Court of Idaho.
May 4, 1965.

Brauner & Fuller, Caldwell, for appellant.

Allan G. Shepard, Atty. Gen., M. Allyn Dingel, Jr., Asst. Atty. Gen., Boise, C. Robert Yost, Pros. Atty., Caldwell, for respondent.

TAYLOR, Justice.

On the evening of March 3, 1964, defendant (appellant) and his wife went out for an evening of dining and dancing. Defendant testified he had "two or three drinks" during the course of the evening and arrived home about 2:00 a. m. on the morning of March 4, 1964. Later that morning defendant drove to Nyssa, Oregon, and upon returning to Idaho at about noon stopped at a local bar on U. S. highway 30. In the bar he ordered two drinks and a ham sandwich. He drank one drink and half of the other and ate the sandwich. He then went back to his car in the parking lot at approximately 1:30 p. m. and slept in the car until 3:30 p. m. On awaking he drove from the parking lot east on highway 30 toward Nampa. He passed a car going the same direction, the driver of which testified that defendant was "going at an exceedingly [sic] rate of speed." About midway between Caldwell and Nampa, defendant came up behind other cars proceeding in the same direction. He testified,

> "I was going faster than I should have been; and I remember coming up behind these two or three cars and passing them, and then the dog jumped over my lap and I went down and pushed

the dog back like that (indicating); and when I looked up, it looked like there was three or four cars in front of me; so I slammed my brakes on and rode, coming closer to the cars; and then I started to go left, and there was a car coming towards me; I think it was a pickup, as I remember it, so I just slipped right straight across in front of the building. I headed right for the building. I saw the kid, but it wasn't just a second before I hit him."

Defendant's car skidded along the highway and across the left, or westbound, lane and off the paved portion of the highway onto the graveled shoulder and entrance-way in front of a business building, a total distance of 126 feet, and came to rest with its front end angled slightly toward the direction from which it had come. The car struck down and injured two small boys who had been walking along the north shoulder of the highway.

Defendant was taken from the scene to the Caldwell Memorial hospital where he signed a written consent to a blood test. In the hospital laboratory five cc's of blood were drawn from defendant's arm at 4:40 p. m. by Robert H. Jensen, M.D. The doctor handed the blood sample to laboratory technicial Richard Crowley. The blood sample was labeled as defendant's blood and placed in a locked refrigerator box

in the laboratory. By whom this was done does not appear from the record. Technician Crowley did not testify. The blood sample was taken from the box by the director and chief technician of the laboratory, John C. Holste, and was subjected to a reduction test for alcoholic content by Mr. Holste, commenced at 5:10 p. m. on the same day. Mr. Holste testified that the reason the blood sample was placed in the refrigerator box was that it was closing time and he had not intended to run the test until the next morning, but in response to a request to do so, he conducted the test immediately.

Mr. Holste further testified as to the result of the test and his written report of the test was admitted in evidence over objection of the defendant that the blood tested had not been sufficiently identified as the blood drawn from defendant. The admission of this evidence is assigned as error. John F. Stecher, M.D., testified that he was at the hospital at the time, approximately 4:30 to 4:40 in the afternoon; that as he entered the laboratory Dr. Jensen was drawing blood from defendant's arm; that there were present sheriff Hale, deputy sheriff Comstock, chief technician John Holste, technician Richard Crowley, Dr. Jensen, and the defendant.

From the evidence it is clear that the blood was drawn from defendant's arm in the laboratory, labeled and placed in the

refrigerator box in the laboratory in the presence of the technician who made the test; that the test commenced within thirty minutes after the blood was drawn. There is no evidence in the record which would raise a suspicion of tampering with the sample, or that anyone who might have an interest in so doing had access to it. The blood tested was sufficiently identified as that of the defendant and no error was committed in the admission of the evidence of the result of the test.

In State v. Coburn, 82 Idaho 437, 354 P.2d 751 (1960), this same issue was raised. In that case the blood was drawn from the defendant by a doctor, given to a nurse, who sealed and marked it, and delivered it to the sheriff at Preston in Franklin county. The sheriff took the sample to the L.D.S. hospital in Logan, Utah, and there delivered it to a nurse. The following morning the technician took the sample from the hospital refrigerator and tested it for alcohol content. The nurse who received the sample at the hospital was not called as a witness. This court concluded as follows:

"Although the testimony of the person receiving the blood samples at the hospital is absent from the record, nevertheless the circumstances sufficiently disclose the identification of the samples tested as being those drawn from appellant by Dr. Cutler. Nor is there any evidence which would cast the slightest inference that any irregular-ity occurred after the samples were delivered to the hospital by Sheriff Talbot. Therefore, such evidence was properly admitted." 82 Idaho at 447, 448, 354 P.2d at 757.

In State v. Webb, 76 Idaho 162, 279 P.2d 634 (1955), evidence of the result of a blood test was objected to. The test in that case occupied a lapse period of thirteen and a half hours, due to the type of test conducted, and the blood was not continually under the observation of the technician during all of that time. There this court said:

"There was nothing in the evidence which would even create a suspicion the blood was molested during the analysis or that anyone who might be interested in tampering with it had access to the hospital laboratory." 76 Idaho at 168, 279 P.2d at 638.

In Eisentrager v. State, 79 Nev. 38, 378 P.2d 526 (1963), the Nevada court was concerned with a case in which the technician took the two vials containing blood drawn from the defendant, from the laboratory into an adjoining room where he remained alone for a few minutes:

"The burden is upon the party relying upon expert testimony to prove the identity of the object upon which such testimony is based. However, the practicalities of proof do not require such party to negative all possibility of sub-

stitution or tampering. He need only to establish that it is reasonably certain that substitution, alteration, or tampering did not occur. In the present case there is absolutely no indication that the medical technician, who had sole possession of the vials for approximately two minutes, substituted, altered, changed or tampered with their contents, nor is there the remotest suggestion that he may have been interested in doing so. In such circumstances it was proper for the trial judge to admit the evidence and let what doubt, if any, regarding its identity, go to its weight. People v. Riser, 47 Cal.2d 566, 305 P.2d 1; cases collected Annot. 21 A.L.R.2d 1216." 378 P.2d at 531. See also: State v. Fornier, 103 N.H. 152, 167 A.2d 56 (1961).

■ Defendant's second assignment of error is as follows:

"II. The trial court erred in allowing expert testimony from a written report shown to be an average percentage result of three chemical blood tests, where the evidence failed to show that the expert witness had any personal knowledge of the taking of the blood sample which allegedly was the subject matter of the tests or the identity of the person from whom the blood sample was received."

This assignment raises the same issue as to the identity of blood tested by the witness Holste and is disposed of by the conclusion reached in the foregoing discussion of that subject. However, it was urged upon oral argument that the court erred in allowing the technician to testify to a result which was the average of three tests of defendant's blood made by the witness. The technician testified that it was standard practice at the hospital to run three tests of blood submitted for examination. The average testified to by the technician fixed the alcohol content of defendant's blood at 0.15, or 15/100 of 1% of alcohol by weight. No error was shown in this regard.

Defendant assigns as error the court's refusal to give his requested instruction No. 1, as follows:

"There has been introduced the testimony of certain witnesses who purport to be skilled in their line of endeavor. Such witnesses are known in law as expert witnesses. An expert witness is one who is skilled in any certain art, business or profession, possessed of peculiar knowledge acquired by study, observation and practice.

"You are instructed that you may consider the testimony of these witnesses, and give it such weight and value as you think it should have, but the weight and value to be given their testimony is for you to determine. You are not required to surrender your own judgment to that of any person testifying as an expert, or to give controlling

effect to the opinion of an expert, for the testimony of an expert, like that of any other witness, is to be received by you and given such weight and value as you deem it is entitled to receive."

The request was refused by the judge and endorsed, "Given in other form." This notation has apparent reference to instruction No. 15, which was given as follows:

"You are the sole judges of the credibility of the witnesses, of the weight of the evidence, and of the facts, all in this case. In weighing the testimony of such witnesses and determining their credibility, you should consider their opportunity for seeing, knowing or hearing the things about which they testified, their demeanor and conduct while on the witness stand, their interest or lack of interest in the case, their bias or prejudice, if any has been shown, and any other circumstances shown in the testimony which, in your judgment, affects their credibility."

In support of his contention defendant cites Alexander v. State (Okl.Cr.) 305 P.2d 572 (1956). In Oklahoma the rule has been followed that it is better practice to give such instruction when requested. Defendant also cites Lawrence v. City of Los Angeles, 53 Cal.App.2d 6, 127 P.2d 931 (1942). In that state the statute (Penal Code, § 1127b) requires such an instruction

in a criminal case where expert testimony is given.

The two decisions cited from this jurisdiction, Walker v. Hogue, 67 Idaho 484, 185 P.2d 708 (1947), and Stroscheim v. Shay, 63 Idaho 360, 120 P.2d 267 (1941), were both written on appeals from the industrial accident board in which the court said that the testimony of expert witnesses was to be weighed by the board and given such credence as it might determine.

While an instruction such as requested may be considered proper in the criminal case in which experts testify, in this case the subject matter was sufficiently covered by instruction 15 as given. In addition, the request here considered goes further than merely advising the jurors that they are not bound by the testimony of an expert. The portion of the sentence, "You are not required to surrender your judgment to that of any person, testifying as an expert," is subject to the criticism that it would tend to depreciate the testimony of the expert witness, and to prompt a juror to ignore the opinion of an expert if contrary to his own.

Instruction No. 4 was given as follows:
"Idaho Law provides that it is unlawful, and constitutes the crime of Driving While Under the Influence of Intoxicating Liquor, for any person to intentionally drive a motor vehicle on a

**534**

public highway in the State of Idaho while under the influence of intoxicating liquor.

"Any person who is driving such a vehicle on such a highway is under the influence of intoxicating liquor if then and there, from prior imbibing of such liquor, that person's physical or mental facilities, normally utilized in such driving, are then and there affected and impaired to some, though not necessarily to any particular, extent."

The giving of this instruction is assigned as error. Though technically correct, the last line of the instruction is poorly worded. The wording approved by this court is set out in State v. Glanzman, 69 Idaho 46, 202 P.2d 407 (1949) as follows:

" 'To constitute this crime, it is not necessary that the driver of the motor vehicle be shown to have been in any particular degree or state of intoxication, but only that such driver at the time charged had consumed intoxicating liquor to such an extent as to influence or affect his driving of the motor vehicle.' " 69 Idaho at 49, 202 P.2d at 408.

And in State v. Thomas, 79 Idaho 372, at 376, 318 P.2d 592 (1957). However, it does not appear that the instruction as given would mislead the jury as to the correct rule.

 In addition to the blood test, there was ample evidence of the intoxication of the defendant. Several witnesses testified to his action and conduct; his manner of speech; the odor of alcohol on his breath; and to their opinion therefrom that he was intoxicated. It has not been shown that he was prejudiced by any ruling made, or instruction given by the court.

Judgment affirmed.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.