BRUCE GEORGE HANNAH, JR. *v.* STATE
OF MARYLAND

[No. 93, September Term, 1967.]

*Decided March 12, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Joseph E. O'Brien, Jr.,* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *Barry H. Helfand, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The Appellant, Bruce George Hannah, Jr., was convicted of arson and burglary by a jury in the Circuit Court for Montgomery County. Judge Walter H. Moorman, the presiding judge, sentenced him to the Maryland Penitentiary for periods of fifteen years and five years, respectively, the sentences to be served concurrently.

In this appeal, he contends (1) that the failure of the lower court to make timely appointment of counsel constituted a de-

nial of due process and (2) that there was legally insufficient evidence to support the jury's verdict.

Hannah was arrested on July 14, 1966, in connection with a fire which had occurred in St. Paul's Methodist Church, Kensington, Maryland, early in the morning of May 3, 1966. Unable to furnish bond, he remained incarcerated until his trial, which was held on December 8, 1966. He had waived a preliminary hearing on July 19, 1966; was indicted on September 8, 1966; and arraigned on October 7, 1966, at which time counsel was appointed to represent him. His Motion to Dismiss for Lack of a Speedy Trial was based on the alleged excessive lapse of time between the date of his arrest and the appointment of counsel. The Motion, after hearing, was denied by the lower court on October 25, 1966.

## I.

In support of his first contention, the Appellant argues that the failure to appoint counsel in a timely manner: (a) prevented the Appellant from making a well reasoned decision with regard to his right to a preliminary hearing, (b) made more difficult the preparation of his defense with respect to the collection of evidence, and (c) caused a delay in the trial of his case, thereby denying him his right to a speedy trial. We find these arguments to be unconvincing.

There is no requirement that a preliminary hearing be held, even if demanded, since it is not an essential proceeding in obtaining a valid conviction, *Ross v. Warden,* 1 Md. App. 46, 52, and even where a preliminary hearing is conducted, this Court has held that, except in the most unusual circumstances, an accused has no absolute right to have counsel appointed prior thereto. *Crumb v. State,* 1 Md. App. 98, 104. The Appellant's reliance upon *Miranda v. Arizona,* 384 U. S. 436; *Escobedo v. Illinois,* 378 U. S. 478, and *Gideon v. Wainwright,* 372 U. S. 335, is misplaced. *Miranda* and *Escobedo* deal with the validity of confessions in the absence of counsel; and as Chief Judge Murphy stated for this Court in *State v. Hardy,* 2 Md. App. 150 (p. 155) :

"Contrary to the view that Hardy's attorney urged upon the court at the post conviction hearing, *Gideon*

*v. Wainwright,* 372 U. S. 335, deals with representation by counsel at the trial itself, and does not apply the rule to counsel 'retrospectively to every substantive stage of a criminal proceeding in Maryland.' There is no constitutional requirement that a person be granted counsel at the time of arrest."

It is apparent, therefore, that the lapse of time between the Appellant's arrest and the appointment of his counsel did not constitute a denial of a speedy trial or a denial of due process of law.

## II.

We think there was legally sufficient evidence to support the jury's verdict. The record revealed that the Minister of St. Paul's had left the church about 10:50 P.M. on the evening of May 2, 1966, being the last to leave. About 12:50 A.M. on the morning of May 3, 1966, he received a call telling him of a fire at the church. Upon his arrival he could see that the sanctuary was in flames and thereafter he was able to enter the church with the Fire Marshal. He was unable to say whether anything was missing. However, he did identify a partially burned photograph of a religious picture used as a teaching aid in the church school. He explained that it was found on the floor of an interior storage closet in a room where only teachers in the school were allowed; that the picture, along with others, was regularly kept on a table in the outer area; and that the pictures were not distributed outside the church. It was on this picture that the Appellant's fingerprints were found.

The Minister further testified that certain entrance doors to the church were normally open during the day and normally closed and locked by a night watchman between 10:30 P.M. and 11:00 P.M. each evening. Referring to the evening in question, the Minister stated: "We pay a man to lock that building and I was there when he locked the building." He conceded, however, that he did not personally check to ascertain whether the doors were actually locked, but he did hear the doors being closed. Finally, he testified that when he arrived during the fire, one of the exterior doors, which had been closed prior to the fire, was open.

A detective of the Montgomery County Police Department testified as to the finding of the Appellant's fingerprints and estimated that the impression was made between twelve and twenty-four hours prior to its being "lifted" by the police. Although the detective was not present "when it was dusted," it was turned over to him as he came on duty on May 4, 1966. Representatives of the County Fire Department testified that, in their opinion, the fire was of an "incendiary" origin.

The Appellant told the police that he had never been in the Church, stating that he lived nearby, had heard the fire engines and went to the scene of the fire.

"It is generally recognized that fingerprint evidence found at the scene of a crime *must be coupled with evidence of other circumstances* tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime. 3 Wharton *Criminal Evidence* (12th ed.), sec. 982; II Wigmore, *Evidence* (3rd ed.) ; §414." (Emphasis added). *McNeil v. State,* 227 Md. 298, 300. We think that the "evidence of other circumstances" requirement was met. The lower court had before it not only the Appellant's fingerprints found upon the charred religious picture, but additionally, the fact that the fingerprints had been recently placed thereon; that the picture was found in a place where it did not belong; and that no other persons than members of the teaching staff were permitted in the area where the picture with the Appellant's fingerprints thereon was found. We are of the opinion that there was adequate evidence to support the jury's finding that the Appellant's fingerprints were impressed on the picture at the time the crimes of arson and burglary were committed.

The Appellant's argument that the "verdict of guilty of arson must have been predicated on speculation" is not persuasive. Fire Department experts testified that the fire did not result from natural causes but was of an incendiary origin; and there was ample evidence from which the jury could infer that the Appellant "wilfully and maliciously" set the fire. Md. Code, Art. 27, Sec. 6; *McDowell v. State,* 231 Md. 205.[1]

---

1. The State suggests that the sentence of fifteen years imposed in connection with the Appellant's conviction of arson exceeds the

330

Likewise, we find no merit in the Appellant's argument that since nothing was found to be missing, there could be no burglary. The crime of burglary consists of the breaking and entering of the dwelling house of another in the nighttime with intent to commit a felony. *Hall v. State,* 1 Md. App. 392. A church may be the subject of common law burglary. *McGraw v. State,* 234 Md. 273; *Dortch and Garnett v. State, supra.* Here the open entrance door which had been secured earlier was evidence of the breaking; the fingerprints of the Appellant and the other evidence demonstrated that the Appellant had entered; and the arson was certainly evidence of an intent to commit a felony. It is well settled that in prosecutions for burglary, intent may be inferred from the circumstances. *Irving v. State,* 230 Md. 364.

*Judgment affirmed.*

---

maximum provided in Md. Code, Art. 27, Sec. 7—burning of a church. It is clear, however, that he was convicted of violating Art. 27, Sec. 6—common law arson, which provides for a maximum sentence of twenty years. The common law definition of a dwelling house encompasses a church. *Dortch and Garnett v, State,* 1 Md. App. 173.