448 P.2d 762

**STATE of Idaho, Plaintiff-Respondent,**
**v.**
**Rosendo REYNA, Defendant-Appellant.**
**No. 10074.**

Supreme Court of Idaho.
Dec. 27, 1968.

A. Elwyn Larson, Nampa, and L. Kim McDonald, Pocatello, for appellant.

Allan G. Shepard, Atty. Gen., and Roger B. Wright, Deputy Atty. Gen., William J. Tway, Deputy Pros. Atty., Ada County, Boise, for respondent.

McQUADE, Justice.

The evidence showed that on March 12, 1967, a Sunday, at about 2:00 p. m., defendant Reyna entered Miller's Grocery and Jean and Elsie's Tavern, which is located on the northeast corner of the intersection of Highway 30 and Black Cat Road in Ada County. The bartender testified that Reyna was already a little drunk when he ordered his first beer. A few minutes later Reyna began yelling, was asked to leave the bar, and was finally escorted out. From the window of the bar the bartender watched Reyna drive south on Black Cat Road for the quarter mile or so before the road enters a wooded area. As it was March, the only obstruction to the bartender's view of Reyna on this stretch of road was a woven wire fence. A few minutes later Reyna returned to the tavern. As he drove his car into the parking area at the southeast corner of the tavern he nearly hit a man walking from the barroom door to the restroom door, both of which doors are on the south side of the bar and near its southeast corner.

In response to a call from the bartender's son, Officer Green arrived at the tavern at about 3:00 p. m. to find Reyna sitting in his car where it was stopped in the parking area. Officer Green testified that he concluded Reyna was intoxicated because: (1) he fumbled with his driver's license when asked for it, and dropped other papers; (2) there was an odor of alcohol on his breath; (3) his eyes were bloodshot; (4) when asked to get out of the car, he staggered and leaned against his car. Therefore, Officer Green arrested him at 3:30 p. m. and drove him to the Ada County jail. Reyna spoke to the officer in slurred speech and was drowsy during the fifteen to twenty minute drive to Boise. The officer administered no chemical test for drunkenness because he felt it was not necessary. The officer, on arresting Reyna, advised him of his right to consult with an attorney, but Reyna made no response to this state-

ment. The officer did not advise Reyna of his right against self-incrimination but said that Reyna did not make any statements which he felt would incriminate him.

For the purpose of a motion for directed verdict of acquittal on the ground that Reyna had no knowledge of his right to counsel because he did not understand English, Reyna's daughter testified that Reyna had very little command of English and could not read or write it. However, she also admitted that Reyna spoke broken English; that English was spoken to him at times at home by his family; that Reyna would understand that he was under arrest at least from the officer's uniform. The State on rebuttal put in the testimony of the Ada County jailer to the effect that Reyna understood the questions on the admittance form which were asked orally in English and answered by him in English.

The court denied the motion for directed verdict of acquittal because, although the court was "not certain that [Reyna] understood what the arresting officer stated [about being] entitled to an attorney," the only evidence used against Reyna was the "visual observation of the arresting officer." It was stipulated that no other advice was given to Reyna respecting his constitutional rights until he was arraigned at 10:00 a. m. on the next day, Monday, March 13, 1967. There he was fully informed of his rights through an interpreter.

The jury found Reyna guilty as charged, and he was sentenced to thirty days in jail and fined one hundred and fifty dollars. Of this sentence ten days and fifty dollars were suspended. Reyna was also ordered to pay forty-eight dollars costs.

Appellant's assignments of error fall into three main categories: right to counsel, due process of law and assessment of costs. Appellant contends that he was entitled to the representation of counsel immediately after his arrest. It is asserted that this was a critical stage of the criminal proceeding because only then would efforts of counsel to obtain a blood test for appellant have had any value for the purpose of refuting the charge of driving while under the influence of alcohol. It is argued that, because appellant possessed only a limited comprehension of English, the arresting officer failed properly to inform him of his right to counsel and that therefore appellant was unlawfully prejudiced when he was fully informed of his rights only at arraignment eighteen and one-half hours after his arrest.

 The offense for which appellant was convicted is set forth in I.C. § 49–1102, which provides in pertinent part that:

"(a) It is unlawful and punishable as provided in paragraph (d) of this section for any person who is under the influence of intoxicating liquor to drive or to be in actual physical control of any vehicle within this state.

* * * * * *

"(d) Every person who is convicted of a violation of this section shall be punished by imprisonment in the county or municipal jail for not less than thirty (30) days nor more than six (6) months or by fine of not less than $100 nor more than $300 or by both such fine and imprisonment. * * *"

The punishment for this offense may not exceed six months imprisonment and a $300 fine. For this reason, the Idaho statutes providing for representation by counsel compensated by the state appear not to apply to this offense. I.C. §§ 19–851 through 19–866, S.L.1967, ch. 181, apply when a person is accused of a "serious crime," which is defined by I.C. § 19–851 (d) as "includ[ing]: (1) a felony; (2) a misdemeanor or offense the penalty for which includes the possibility of confinement for more than 6 months or a fine of more than $300; * * *." However, the use of the word, "includes," indicates that the list of offenses which may constitute a "serious crime" was not intended to be exhaustive. In any event, the field of operation of these provisions is

ultimately made coextensive with the scope of the general federal constitutional right to the assistance of counsel. This is indicated by the language entitling needy persons the right to be represented by counsel "to the same extent as a person having his own counsel is so entitled"[1] and by I.C. § 19–866, which provides that "the protections provided by this act do not exclude any protection or sanction that the law otherwise provides." It is therefore necessary to determine generally whether appellant's right to the assistance of counsel as guaranteed by the sixth and fourteenth amendments to the United States Constitution was infringed in this case.

Appellant cites only Gideon v. Wainwright[2] and Cox v. Louisiana[3] in support of the assertion that appellant's right to counsel was infringed. *Gideon* held that the right to the assistance of counsel is essential to a fair trial and that the conviction of an indigent defendant who was without the assistance of counsel would violate the due process clause of the fourteenth amendment. That case made the sixth amendment right to counsel applicable to the States, but it held only that an accused was entitled to the assistance of counsel at trial. In order to prevent representation at trial from becoming a hollow right, Escobedo v. Illinois then held[4]

"that where * * * the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting in-

criminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' * * * and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

*Escobedo* thus extended the scope of the right to counsel to those cases in which an investigation had focused upon a particular accused, but the purpose of this extension and the thrust of this holding was initially to prevent self-incrimination and finally to bar the introduction of evidence obtained in cases where the preventive measures were not respected. *Escobedo* established an essentially exclusionary rule applicable to the fruits of illegal interrogation.[5] Similarly, Miranda v. Arizona[6] imposed the requirement that various warnings be issued to all persons in custody "in order * * * to permit a full opportunity to exercise the privilege against self-incrimination * * *."[7] "But unless and until such warnings * * * are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."[8] Thus, the Court elaborated the exclusionary rule of *Escobedo.*

Because these cases establish an exclusionary rule applicable to testimonial evidence obtained by interrogation of persons in custody, they are not pertinent

---

1. I.C. §§ 19–851 to 19–866, passim.

2. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

3. 379 U.S. 559, 85 S.Ct. 453, 13 L.Ed. 471 (1965); this case is not at all pertinent to any issue in the present case, for it deals only with freedoms guaranteed by the first amendment to the U.S. Constitution.

4. 378 U.S. 478 at 490–491, 84 S.Ct. 1758 at 1765, 12 L.Ed.2d 977 (1964).

5. See Rothblatt, "Police Interrogation and the Right to Counsel, Post Escobedo v. Illinois: Application v. Emasculation," 17 Hastings L.J. 41 (1965).

6. 384 U.S. 436 at 467–479, 86 S.Ct. 1602, at 1624, 16 L.Ed.2d 694 (1966).

7. Miranda at p. 467, 86 S.Ct. at p. 1624.

8. Id. at p. 479, 86 S.Ct. at p. 1630.

to the issue in the present case. The record in this case contains absolutely nothing which would constitute self-incrimination by appellant. Not a single word which he might have uttered was used against him, and he did not testify in his own behalf. The conviction was based upon the observations of Officer Green and a tavern owner as to appellant's appearance, demeanor and conduct.[9]

██ A careful scrutiny of the record in this case indicates that the absence of counsel immediately after arrest did not cause appellant to be substantially prejudiced in his defense at trial. Appellant contends he was so prejudiced because had counsel been present shortly after arrest a blood test might have been requested in order to refute the charge. However, the premise of this assertion is speculative at best, for, if the questioned evidence in the record has any value at all, it would have to be concluded that a blood test would have shown beyond all doubt that appellant was intoxicated.

It is true that the evidence of alcohol content in an accused's blood is transitory in nature, and therefore scientific evidence of an absence or non-criminal quantities of alcohol may be lost through delays in acquiring counsel and a doctor. However, the loss of this means of defense (assuming it would be useful at all) does not destroy the essential fairness of the accused's trial. Defense counsel is not prevented from attacking the foundation, accuracy, credibility and sufficiency of ordinary testimony as to intoxication on grounds other than its correspondence or not to the results of a blood test. For these reasons we conclude that appellant was not unlawfully denied his right to the assistance of counsel even if the State did not effectively inform appellant of his rights until arraignment.[10]

██ Appellant next argues that the State deprived him of due process of law by failing to administer a blood test to determine whether or not he was intoxicated. Appellant asserts that by this omission the State suppressed probative and exculpatory evidence. Appellant in effect asserts that due process requires a best evidence rule as to evidence of intoxication. Appellant cites I.C. § 49-355 for this proposition. However, that section cannot fairly be construed as imposing an independent obligation upon the State to test the blood of an accused in all cases in which an accused is arrested for driving under the influence of intoxicating liquor. I.C. § 49-352 deems all drivers to have consented to such a test, and I.C. § 49-355 merely permits the person tested to have a physician of his own choosing administer another test independently of the one administered by the police. There is no language in these sections which imposes upon the State the type of duty which appellant asserts. The latter section is intended simply to preserve equality of information in an adversary system.

Appellant also relies upon In re Newbern.[11] In that case, after being charged with public drunkenness,

"the defendant requested the opportunity to call a doctor of his own choice and at his own expense in an effort to obtain the only evidence that could vindicate him of the charge. This was refused * * *. The refusal to permit him to call a doctor was unreasonable and a denial of due process."[12]

The Court stated that "[w]hile there is no duty or obligation on the law enforcement agencies to give a blood test under

---

9. State v. McFarland, 88 Idaho 527 at 534, 401 P.2d 824 (1965). Cf. Schmerber v. California, 384 U.S. 757 at 760–765, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

10. Cf. Freeman v. State, 87 Idaho 170 at 176–179, 392 P.2d 542 at 545–547 (1964); Hannah v. State, 3 Md.App. 325, 239 A.

2d 124 at 126 (1968); People v. Morris, 30 Ill.2d 406, 197 N.E.2d 433 at 436 (1964).

11. 175 Cal.App.2d 862, 1 Cal.Rptr. 80, 78 A.L.R.2d 901 (1959).

12. Id. at 866, 83.

these circumstances, the arrested person, on his own behalf, should be entitled to a reasonable opportunity to attempt to procure a timely sample."[13] Thus, it was expressly ·held that the denial of such a request was unreasonable but that in no event did the State have an independent obligation to give a test. Appellant in the instant case made no request for permission to procure a blood test.

The subsequent California case of In re Koehne[14] involved a defendant accused of public drunkenness who indicated at the time of arrest his desire to have blood tests taken but who never stated that he was willing or able to bear the expense of calling his doctor for that purpose. The California Supreme Court held that, since the accused had not renewed his request for permission to procure a blood test at the station, the State did not deny due process when it failed to give the accused a test on its own initiative. Thus it appeared that "the petitioner failed to avail himself of rights which the arresting officers advised him were his."[15] The Court relied upon the dichotomy drawn in the *Newbern* case:

> "* * * the law does not impose upon law enforcement agencies the requirement that they take the initiative, or even any affirmative action, in procuring the evidence deemed necessary to the defense of an accused. Rather it is the accused who must act to protect his interests, and it is only when he is denied an opportunity, reasonable under the circumstances, to procure a timely sample of his blood that he can properly claim a denial of due process. In re Newbern * * *."[16]

Thus, the right to due process of law does not include the right to be given a blood test in all circumstances. To hold otherwise would be to transform the accused's right to due process into a power to compel the State to gather in the accused's behalf what might be exculpatory evidence. In this case, the State produced testimonial evidence of intoxication, but it had no obligation to obtain for appellant what he speculates might have been more scientific evidence of sobriety. The State may not suppress evidence, but it need not gather evidence for the accused.

It is noteworthy that appellant also argues on this same premise that the State suppressed evidence by failing to collect names of witnesses at the tavern. It could be speculated that such witnesses would give exculpatory evidence. Yet the assertion that the State has a duty to collect such evidence illustrates the fact that appellant's line of reasoning would transform guarantees of a fair adversary system into State obligations to defend the accused as well as prosecute him. Certain tactical disadvantages to an accused may be inherent in an adversary system, but there is no authority for the proposition that the State's failure to correct them constitutes a denial of due process of law.

In this connection, appellant cites Thomas v. United States[17] for the well-recognized rule "that a conviction cannot stand where a prosecutor has, either wilfully or negligently, withheld material evidence favorable to the defendant." The Court there reaffirmed the rule that the prosecutor must disclose all material evidence "in his possession" and proceeded to find no "concealment" or "suppression" of evidence. But the prosecution cannot be said to conceal evidence it does not possess or control. Nor can the prosecution be said to suppress evidence simply by omitting to gather evidence unnecessary to its case. That rule therefore has no application to the State's omissions in this case to give appellant a blood test and to collect the names of witnesses, both

13. Id.

14. 54 Cal.2d 757, 8 Cal.Rptr. 435, 356 P.2d 179 (1960).

15. Id. at 760, 437, 181.

16. Id. at 759, 437, 181.

17. 343 F.2d 49 at 53 (9th Cir. 1965).

of which the State believed unnecessary to its case.[18]

■ Finally, appellant has challenged the validity of the assessment of forty-eight dollars costs against him. We agree with this contention of appellant, for nowhere does the record show that a cost bill was prepared or presented in order that appellant would have an opportunity to challenge the assessment. At least this much is required by State v. Bassett.[19] We have further concluded, for the reasons set forth in State v. Hanson, 92 Idaho 665, 448 P.2d 758 that a proper determination of costs may not include the assessment of fees and expenses of jurors against a convicted criminal defendant.

■ As to appellant's other assignments of error, there was sufficient competent evidence in support of the verdict to prevent us from holding as a matter of law that appellant could not be found to have driven his car while under the influence of intoxicating liquor.[20] The court did not commit error in refusing to instruct the jury to find for the defendant if the arresting officer failed to advise appellant of his right to counsel because appellant in the circumstances of this case did not have to be advised of his right to counsel before arraignment which occurred the next morning following his arrest.

For these reasons the conviction for driving while under the influence of intoxicating liquor is affirmed, but the order requiring appellant to pay costs is vacated and remanded for a proper determination, from which the assessment of any costs for fees and expenses of jurors must be excluded.

SMITH, C. J., and TAYLOR, McFADDEN and SPEAR, JJ., concur.

18. Arthur v. Commonwealth, 307 S.W. 2d 182 at 184–185 (Ky.App.1957), is distinguishable for the same reasons.

19. 86 Idaho 277 at 289, 385 P.2d 246 at 253 (1963).

20. I.C. § 49–1102(a); State v. McFarland, 88 Idaho 527 at 533–534, 401 P.2d 824

at 827–828 (1965); State v. Thomas, 79 Idaho 372 at 376–377, 318 P.2d 592 at 594–595 (1957); State v. Glanzman, 69 Idaho 46 at 49–52, 202 P.2d 407 at 408–410 (1949).