[No. 23955-4-I.   Division One.   April 30, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. JEANEANE WOOLBRIGHT, *Petitioner*.

*Albert A. Rinaldi, Jr.,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr* and *David Bruce, Deputies,* for respondent.

SCHOLFIELD, J.—The defendant, Jeaneane L. Woolbright, seeks discretionary review of a superior court "Decision on RALJ Appeal" that reversed the Seattle District Court's dismissal of her driving while intoxicated charge. We affirm.

### FACTS

On January 29, 1988, at approximately 2:20 a.m., Washington State Trooper R.A. Cooper observed Woolbright's vehicle, stopped her, and subsequently arrested her for DWI. Because it was raining very hard at the time of the arrest, Woolbright declined to perform field sobriety tests on the street. Woolbright was then taken to the Seattle police station located at Northgate. She was read her *Miranda* rights at 2:52 a.m. and her Initiative 242 (RCW 46.20.308) warnings at 3 a.m. In particular, she was told:

> You are under arrest for driving a motor vehicle under the influence of intoxicating liquor. Further, you are now being asked to submit to a test of your breath which consists of two separate samples of your breath, taken independently, to

determine alcohol content. You are now advised that you have
the right to refuse the breath test. That if you refuse your
privilege to drive will be revoked or denied by the Department
of Licensing. You have the right to additional tests adminis-
tered by a qualified person of your own choosing and at your
own expense, and that your refusal to take the test may be
used in a criminal trial.

Woolbright indicated that she understood the implied con-
sent warnings, signed a form indicating that she read and
understood the warnings, and agreed to take the breath
test.

Shortly thereafter, the trooper found that the breath
testing machine (the BAC Verifier machine) at the Seattle
police station at the Northgate office was defective. The
trooper then advised Woolbright she was going to the Uni-
versity of Washington police station for the breath test.
After arriving at the University of Washington police sta-
tion and after completing some forms, the trooper went to
use the BAC Verifier machine at that location and found
that it was in for servicing and no one had told the State
Patrol that it had been removed.

The trooper testified that there were other BAC Verifier
machines located at the King County police station in
Kenmore and at the Seattle police station located in the
Public Safety Building in Seattle. He indicated that it was
approximately 3:30 to 3:40 a.m. when he learned that the
machine at the University of Washington police depart-
ment was gone.

The trooper indicated that he did not attempt to locate
another machine at that time because Woolbright had been
in his custody for a lengthy amount of time, she had been
very cooperative, and he saw no necessity for transporting
her to another police station and possibly running into the
same problems on a third attempt. Woolbright did not at
any time indicate a desire to have an independent test of
her own choosing performed.

Woolbright filed a motion in the District Court to dismiss
for failure of the officer to take her to a working BAC Veri-
fier machine and complete a valid BAC Verifier breath test,

since he had already invoked Initiative 242 and Woolbright agreed to submit to the test. On June 10, 1988, a testimonial hearing on this motion occurred. On July 15, the District Court entered its oral decision dismissing the charge of DWI against Woolbright for failure of the State to administer a breath test. The trial court stated that the breath test could have been favorable to Woolbright.

The State filed a notice of appeal on July 22, 1988, to King County Superior Court. On March 17, 1989, the Superior Court entered an order reversing the trial court, concluding that the failure to provide a BAC test did not violate due process or constitute government misconduct or arbitrary action.

In its decision of March 17, 1989, the court indicated:

> While the respondent knew she had a right to an independent test administered by a qualified person of her own choosing and at her own expense there is no indication she attempted to exercise that right. She did not have a right under the circumstances to require the State to give her a breathal[y]zer test (BAC) and therefore no governmental misconduct was involved.

On March 20, 1989, Woolbright filed a motion and affidavit for reconsideration in the King County Superior Court. On April 13, 1989, the Superior Court affirmed the March 17, 1989, order reversing the District Court.

On April 28, 1989, Woolbright filed a motion for discretionary review by this court of the Superior Court's reversal of the District Court's decision. On June 6, 1989, this motion was granted.

## RIGHT TO A BREATH TEST

Woolbright argues that she had a right to a breath test administered by the arresting officer once she was placed under arrest, the implied consent law (RCW 46.20.308) was invoked, and she agreed to take a breath test.

RCW 46.20.308, the implied consent law, provides in part as follows:

> (1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or

blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

RCW 46.61.502 provides what constitutes driving while under the influence of intoxicating liquor in pertinent part as follows:

A person is guilty of driving while under the influence of intoxicating liquor or any drug if . . .

(1) The person has 0.10 grams or more of alcohol per two hundred ten liters of breath, as shown by analysis of the person's breath made under RCW 46.61.506; or

. . . . .

(3) The person is under the influence of or affected by intoxicating liquor or any drug . . ..

The statutory scheme in Washington relative to breath tests contains no language that can reasonably be interpreted as giving a suspect a right to a breath test to be administered by the arresting officer or under his supervision. The statutory scheme does give a suspect the right to an independent breath test,[1] and Woolbright was advised of that right and could have exercised it in this case. She did not do so.

Furthermore, chemical tests are neither necessary nor required to prove intoxication. *People v. Culp,* 189 Colo. 76, 537 P.2d 746, 748 (1975). Generally, the giving of a chemical test for intoxication is not mandatory, and the failure to administer such test does not constitute a denial of due process. 7A Am. Jur. 2d *Automobiles and Highway Traffic* § 305, at 494 (1980) (citing *Kettering v. Baker,* 42 Ohio St. 2d 351, 328 N.E.2d 805 (1975)).

The State has a duty to preserve material evidence for a defendant; however, this duty is limited. Investigating officers are not required to seek out exculpatory evidence or

---

[1]With regard to additional tests, RCW 46.20.308(2) provides in part as follows: "The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506."

conduct tests to exonerate a defendant. *State v. Judge,* 100 Wn.2d 706, 716–17, 675 P.2d 219 (1984).

Although no Washington case specifically addresses the issue, cases from other jurisdictions with similar statutory schemes unanimously hold that implied consent statutes do not make mandatory the administration of the chemical tests provided for therein nor entitle anyone to the administration of the tests by the city or any arresting officer. 95 A.L.R.3d 710 (1979); *Kettering v. Baker,* 328 N.E.2d at 807; *State v. Reyna,* 92 Idaho 669, 448 P.2d 762, 766 (1968); *People v. Culp, supra* at 748; *People v. Hedrick,* 192 Colo. 37, 557 P.2d 378, 379 (1976); *State v. Barry,* 183 Kan. 792, 332 P.2d 549, 554 (1958); *Hammer v. Jackson,* 524 P.2d 884, 887 (Wyo. 1974).

In *Montano v. Superior Court,* 149 Ariz. 385, 719 P.2d 271 (1986), a motorist was charged with driving under the influence of intoxicating liquor. Because South Tucson, where the defendant was arrested, had no functioning equipment with which to perform chemical tests for intoxication, the defendant was not required to submit to any test, although the officer could have made such a demand pursuant to Arizona's implied consent statute. The defendant did not request that any test be done, nor did the officer inform him that he had a right to an independent test. *Montano v. Superior Court, supra* at 386. The defendant moved to dismiss, claiming that the implied consent law obligates, rather than permits, police departments to request tests of breath, blood, or urine of DWI suspects. This motion was denied. *Montano v. Superior Court, supra* at 386. On review, the court found that the statute allows, but does not require, chemical testing of defendants.

The "spirit and reason" of the implied consent statute "is to remove drunk drivers from the state's highways, not to provide a shield for a drunk driver. . . ." *State v. Waicelunas,* 138 Ariz. 16, 20, 672 P.2d 968, 972 (App.1983). The statute was enacted as an aid to law enforcement agencies, and it would be ironic indeed if the sword offered to law enforcement in our

battle against the appalling consequences of drunk driving were transformed into "a shield for a drunk driver."

*Montano v. Superior Court, supra* at 387.

In *Kettering v. Baker, supra,* Baker was convicted of operating a motor vehicle while under the influence of alcohol. When transported to the county jail, he was advised that he could, at his own expense and on his own time, have the Breathalyzer or a blood analysis taken. Baker did not request any test. The City did not perform either of these procedures. *Kettering v. Baker,* 328 N.E.2d at 806. Baker moved to dismiss for reason that the failure of the police department to provide a Breathalyzer or blood test for him was a denial of his constitutional rights. This motion was denied. The Ohio Supreme Court affirmed, noting that the implied consent statute and the trial of a charge relating to the operation of a motor vehicle while under the influence are not interdependent, but rather, are separate and distinct, each having its own consequences which may or may not be related. *Kettering v. Baker,* 328 N.E.2d at 807. The court also noted that the officer's testimony indicated that Baker was advised that he could have a test taken at his own expense and that Baker did not request any test. *Kettering v. Baker,* 328 N.E.2d at 807. Finally, the court stated that there was nothing in the language of the statute that entitled anyone to the administration of the test by the city or arresting officers, nor should the statute be read to impose an obligation mandating the test. *Kettering v. Baker,* 328 N.E.2d at 807.

Similarly, in *State v. Reyna, supra,* Reyna was arrested for drunk driving, but the officer administered no chemical test for drunkenness because he felt it was not necessary. Reyna did not request permission to procure a blood test. Reyna was found guilty of driving while intoxicated based on evidence of visual observation of the arresting officer. *State v. Reyna,* 448 P.2d at 763–64. On appeal, Reyna argued that the State deprived him of due process of law by

failing to administer a blood test to determine whether he was intoxicated. *State v. Reyna,* 448 P.2d at 766. The court disagreed, holding that there was no independent obligation on the State to test the blood of an accused in all cases in which a motorist is arrested for driving under the influence of intoxicating liquor. *State v. Reyna,* 448 P.2d at 766. The court stated as follows:

> [T]he right to due process of law does not include the right to be given a blood test in all circumstances. To hold otherwise would be to transform the accused's right to due process into a power to compel the State to gather in the accused's behalf what might be exculpatory evidence. In this case, the State produced testimonial evidence of intoxication, but it had no obligation to obtain for appellant what he speculates might have been more scientific evidence of sobriety. The State may not suppress evidence, but it need not gather evidence for the accused.

*State v. Reyna, supra* at 674.

In light of the above authorities, as well as the language of the statute, we hold that the implied consent statute of Washington does not require that a defendant arrested for DWI be given a breath test, but merely provides that the defendant was deemed to have given her consent and establishes certain guidelines for testing in the event that the test was used or sought to be used.

Woolbright cites *State v. Stannard,* 109 Wn.2d 29, 742 P.2d 1244 (1987) in support of her argument that the implied consent statute requires a breath test be given. In *Stannard,* the defendants requested a second Breathalyzer test to be performed by the police officer who performed the initial Breathalyzer test as their additional test pursuant to the implied consent law. The Washington State Supreme Court concluded that defendant did not have a right to a second Breathalyzer test to be performed by the officer who initiated the first Breathalyzer test. *State v. Stannard, supra* at 36–37. Woolbright argues that implicit in this ruling is the fact that Woolbright had a right to the first breath test administered by the state trooper.

Woolbright misinterprets *Stannard. Stannard* merely says that there is no right to a second breath test performed by the same person. *Stannard* does not stand for the proposition that a breath test must be provided to a defendant as a matter of right.

The cases of *Blain v. Suess,* 93 Wn.2d 722, 612 P.2d 789 (1980) and *State v. Reed,* 36 Wn. App. 193, 672 P.2d 1277 (1983), *review denied,* 100 Wn.2d 1041 (1984), cited by Woolbright, are inapplicable because they deal with situations in which defendant argued that the police unreasonably interfered with a defendant's right to have an additional blood alcohol test, whereas the present case involves a defendant's right to have an initial test performed. Furthermore, although Woolbright was informed of her right to obtain an additional breath test, she made no such request.

Next, Woolbright cites *Greenwood v. Department of Motor Vehicles,* 13 Wn. App. 624, 627, 536 P.2d 644 (1975) in support of her argument that a person has a right to an additional test under the implied consent statute only after she submits or refuses to submit to the test directed by the officer, and therefore, because the officer did not give her the test, she had no right to additional tests.[2] The present case may be distinguished from *Greenwood.* In *Greenwood,* the defendant sought to have additional tests before submitting to or refusing the test conducted by the officer. On the other hand, in the present case, Woolbright did in fact agree to submit to the test administered by the arresting officer, although the officer later determined that a working machine was not available. Therefore, Woolbright had a right to additional tests administered by a qualified person of her own choosing.

---

[2]Woolbright also cites *Graham v. Department of Licensing,* cause 9224–1–III, filed December 29, 1988. *Graham* was withdrawn and refiled January 18, 1990, at 56 Wn. App. 677, 784 P.2d 1295 (1990). It no longer states the proposition for which Woolbright quoted it and thus we need not address it.

ABSENCE OF ARBITRARY ACTION OR
GOVERNMENTAL MISCONDUCT

Woolbright next argues that the trial court correctly dismissed the charge of DWI under CrRLJ 8.3(b) on the grounds that there was governmental misconduct and/or arbitrary action by the trooper because Woolbright had a right to a breath test, agreed to a breath test and yet the trooper decided not to give her one at an available station.

CrRLJ 8.3(b) provides as follows:

> The court, in the furtherance of justice after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct, and shall set forth its reasons in a written order.

The failure of the trooper to administer a breath test was not arbitrary action or governmental misconduct because Woolbright did not have a right to such test. The reasons a test was not given were that the officer was unable to find a functioning machine after two attempts, and Woolbright had been in custody for a lengthy amount of time.

Woolbright cites *Seattle v. Orwick,* 53 Wn. App. 53, 765 P.2d 913 (1988), but *Orwick* has since been reversed. *Seattle v. Orwick,* 113 Wn.2d 823, 784 P.2d 161 (1989). Accordingly, we hold that the Superior Court was correct in reversing the District Court's dismissal of the charge against Woolbright and remanding the case to the District Court for further proceedings.

Judgment affirmed.

FORREST and BAKER, JJ., concur.