# IN THE SUPREME COURT OF THE STATE OF IDAHO
## No. 42614

SAFARIS UNLIMITED, LLC, a Georgia limited liability company,

    Plaintiff-Respondent,

v.

MIKE VON JONES,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Twin Falls, June 2015 Term

2015 Opinion No. 70

Filed: July 17, 2017

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

The judgment of the district court is <u>vacated</u> and this case is <u>remanded</u> for further proceedings. Costs on appeal, but not attorney's fees, are <u>awarded</u> to appellant.

Jeffrey E. Rolig P.C., Twin Falls, attorney for appellant.

Worst, Fitzgerald & Stover, PLLC, Twin Falls, attorneys for respondent. Louis V. Spiker argued.

---

W. JONES, Justice

## I. NATURE OF THE CASE

Appellant Mike Von Jones arranged to hunt big game in Zimbabwe, Africa, with HHK Safaris (Pvt) Ltd ("HHK"). Jones went on the hunt and received an invoice for $26,040.00 from Respondent Safaris Unlimited LLC ("Safaris Unlimited"). Jones then refused to pay Safaris Unlimited for the hunt. As a result, Safaris Unlimited filed a suit for breach of contract. Jones responded that he arranged and engaged in the hunt with HHK, not Safaris Unlimited, and therefore he had no contractual relationship with Safaris Unlimited for payment. He further alleged that he was entitled to offset any amount owed for the hunt with the value of certain trophy items from the hunt and an earlier hunt. Safaris Unlimited moved for summary judgment.

1

The district court granted its motion and entered judgment in favor of Safaris Unlimited. Jones appeals to this Court. We vacate and remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Safaris Unlimited is a Georgia limited liability company. HHK is a private limited corporation organized under the laws of Zimbabwe. The chain of ownership is as follows: (1) Safaris Unlimited is owned entirely by C. Martin Wood, III; (2) Wood owns fifty percent of Bulawayo Trading Company (Pvt) Limited (also a private limited corporation organized under the laws of Zimbabwe); and (3) Bulawayo Trading Company owns forty percent of HHK. Jennifer Ryan is the general manager of Safaris Unlimited, and Graham Hingeston is one of the owners and the day-to-day manager of HHK.

Safaris Unlimited operates as a broker or booking agent for HHK. Other than the actual hunting services provided by HHK, Safaris Unlimited coordinates and assists on all details of the hunt, such as accommodations, transportation, and permits. According to Hingeston, HHK requires that the client pay Safaris Unlimited for the services provided by HHK in all instances. In exchange for the client's agreement to pay Safaris Unlimited, HHK provides the hunting services. HHK does not provide hunting services except with Safaris Unlimited, and Safaris Unlimited only conducts business with HHK. As explained by Ryan, "In the normal course of business, Safaris Unlimited is entitled to the difference between HHK's cost to provide safari and big game hunting services and the price charged the client by Safaris Unlimited." Ryan attached to her affidavit the service agreement between Safaris Unlimited and HHK. Particularly relevant here, the financial management agreement of the parties provides:

> Whereas HHK is in the hunting safari business and agrees to engage SU [Safaris Unlimited] as a financial service agent for the sole purpose of coordinating safari bookings and payments from booking agents, companies and individuals worldwide. . . . SU shall be fully responsible for collection of all deposits, remaining balances and trophy fees. Deposits shall be collected for confirmation of a safari. Remaining balances of daily rates shall be collected prior to commencement of the safari and trophy fees shall be collected within 10 days of the completion of the safari. All funds collected on behalf of HHK shall be forwarded timely on request.

From November 22, 2012, to December 1, 2012, Jones engaged in a safari and hunt of big game with HHK in Zimbabwe. According to Jones's interrogatory responses, he shot a trophy elephant, a tuskless elephant, and a buffalo on the 2012 hunt. Jones has engaged in two

earlier hunts with HHK, one in 2010 and one in 2011. For both of these earlier hunts, Jones paid Safaris Unlimited with a cashier's check after receiving an invoice from Safaris Unlimited.

To arrange the 2012 hunt, Jones directly contacted Hingeston with HHK. Jones testified, "Yes, I was aware that [HHK] used [Safaris Unlimited] for a booking agent . . . previously. But not on the 2012 hunt." In his deposition, Jones explained that the 2012 hunt was "different" than the two earlier hunts because he "had no contact with [Safaris Unlimited] whatsoever." In the two earlier hunts, Jones identified his contact with Safaris Unlimited as his payment to Safaris Unlimited for the hunts with HHK and possibly some contact with Ryan. Although Jones could not remember "for sure," he testified in his deposition that Hingeston had him contact Ryan on at least one of the two previous hunts. According to Jones, this contact was probably an email about the invoice for the hunt.

After the 2012 hunt, on December 6, 2012, Ryan emailed Jones an invoice in the amount of $26,550.00. In response via email, Jones disputed a charge on the invoice (for a cameraman) and also informed Ryan that he had "some serious issues with the quality of service" on the 2012 hunt. Ryan then emailed Jones a new invoice for $26,040.00, removing the disputed charge. Over the next two months, Ryan sent Jones four emails asking him to pay the amount owed for the hunt. In Ryan's last email, she informed Jones that she would be turning over his account to Safaris Unlimited's attorneys for collection. Jones did not respond to these four emails. On May 1, 2013, counsel for Safaris Unlimited sent a demand letter to Jones for payment.

On June 28, 2013, Safaris Unlimited filed a complaint against Jones for breach of contract and sought $26,040.00 in damages plus interest.

On January 6, 2014, Jones answered. Jones admitted that Safaris Unlimited sent an invoice. He also admitted that he had not paid the invoice. He denied, however, that he owed the invoiced amount to Safaris Unlimited. He alleged that Safaris Unlimited was not the real party in interest and that Safaris Unlimited was acting as the collection agency for the real party in interest, HHK, in violation of the Idaho Collection Agency Act (ICAA). As an affirmative defense, he asserted that he was entitled to offset the amount owed with (1) the value of trophy-sized elephant tusks and a buffalo trophy from the 2012 hunt and (2) trophy animals and tusks from the earlier hunt in 2010. According to Jones, he did not receive these trophy items after the hunts.

3

On July 14, 2014, Safaris Unlimited moved for summary judgment. Along with other evidence, as discussed above, Safaris Unlimited presented another invoice for the 2012 hunt. This second invoice was issued by Safaris Unlimited for a total amount of $26,040.00, and it had a signature on the bottom from "M. Von Jones." A licensed professional hunter employed by HHK stated in an affidavit that he presented Jones with this invoice at the end of the 2012 hunt. He also claimed that Jones signed the invoice in his presence. Relying on this invoice, Safaris Unlimited argued that Jones was contractually obligated to pay Safaris Unlimited for the hunt. Safaris Unlimited contended that HHK, as a third party, provided the consideration for Jones's obligation to pay Safaris Unlimited. Safaris Unlimited also argued that it was not subject to the ICAA, but, even if it was, Safaris Unlimited qualified for an exemption. Finally, Safaris Unlimited argued that Jones was not entitled to any offset for the value of certain trophy items because federal and international regulations prohibited the use of the trophy items for commercial purposes.

On August 18, 2014, Jones responded in opposition to Safaris Unlimited's motion. Jones argued that he had a contract with HHK, not Safaris Unlimited. Citing to his deposition testimony, Jones denied that he viewed or signed the second invoice. He claimed that the second invoice did not create any contractual relationship with Safaris Unlimited. He also argued that Safaris Unlimited was acting as a collection agency and was not subject to an exemption to the ICAA. Lastly, Jones argued that he was entitled to substantial offsets. He contended that he was entitled to an offset for the 2012 hunt for the following reason:

> Unfortunately, contrary to what had been agreed, [Jones] was forced to share the camp with nine South Africans, who were extremely noisy, drunk and overbearing most of the time. The South Africans consumed all the food and drank all the Cokes and other drinks. The camp also ran out of diesel fuel. [Jones] left the site early.[1]

---

[1] An email exchange between Hingeston and Jones indicates that Hingeston informed him: "Also just to let you know we have some South Africans that are scheduled to hunt 23–29 there for Buff." Jones responded: "I'm ok with South Africans as long as they are not a bunch of loud, arroga [sic] jackasses as I have unfortunately on occasion encountered in the past." According Jones's deposition, Jones verified with Hingeston either through email or on the phone that there would be two "decent" South Africans on the hunt for three days. Also according to Jones, "these South Africans have a reputation for being drunks and total a-holes if you're in a camp with them."

On the hunt, Jones stated that the nine South Africans "were loud," "took videos all day," "got drunk at night," and "consumed all the food." Jones stated:

> I complained from day one. I said, what the hell is going on here? I was supposed to have two South Africans here, and we've got nine. And we're up all night. I can't sleep. I can't do anything. I said, what's going on? Well, somehow they found out that these guys were going to be there for

Jones also contended that "he has not received tens of thousands of dollars worth [sic] of ivory from the 2010 and 2012 hunts." He argued that whether Safaris Unlimited or HHK could sell the trophies was irrelevant because he was deprived of the value and benefit of those items.

On September 2, 2014, the district court heard oral argument on Safaris Unlimited's motion for summary judgment. The district court then pronounced its decision on the record. The district court summarily found that the facts were undisputed. The district court then determined:

> Safari is owned by Mr. Wood, and Safari owns 50 percent of the Bulawayo Company, which owns 40 percent of the HHK Company, clearly related entities in this case, which I think satisfy the criteria under the Idaho Collection[ ] [Agency] Act which allows Safaris to bring this lawsuit in their name, albeit the hunting party, if you will, was HHK.

In short, the district court ruled that Safaris Unlimited did not violate the ICAA by seeking payment from Jones for the hunting services provided by HHK.

Next, the district court determined the amount owed by Jones:

> There seems to be no dispute as to the value of the hunt: The 26,000 and some odd dollars are set forth in the invoice. I come to that conclusion for two reasons. Number one, though I agree that the mere presentation of an invoice to a party with their responding signature doesn't, in and itself, establish a contract, in this case that establishes a, I think, an acknowledgment that that is a reasonable and fair billing. And when you couple that with the emails that took place later between Mr. Jones and Ms. Ryan, the only dispute that Mr. Jones raises over that invoice really relates to the offset claims that he's making. So I find that the $26,000 obligation is owed subject to any offset claim which I'm going to talk about here in a second.

Thus, the district court determined that Jones was obligated to pay $26,040.00 for the hunt.

Finally, the district court turned to the offset allegations. With regard to an offset for Jones's dissatisfaction due to South Africans at the camp, the district court determined that there was no legal basis for that offset. The district court reasoned: "There's no representation made in the record by Safaris or HHK or anybody else that this would be a quiet camp or that it would be a camp free of any of the things he's complaining about . . . ." With regard to 2012 trophy items, the district court determined that Jones failed to raise an obligation on behalf of Safaris Unlimited or HHK to transport the trophy items. Specifically, the district court recognized that there was no affirmative allegation that Jones was promised shipment as a part of the invoice.

---

like seven days. And that is not what [Hingeston] indicated to me. So it was a miserable hunt. I got the animal. But it was a miserable hunt. Absolutely the worst hunt I've been on in my life.

The district court acknowledged that it did not know whether there was a separate contract for shipment, but it concluded that the burden was on Jones to present evidence for this affirmative defense. The district court clarified:

> [I]f I had before me a contractual provision or agreement that said Safari or HHK is obligated to ship these tusks back at their cost, and that didn't occur, I would agree that that would certainly amount to an offset in this case. But that's a separate contractual relationship, I think, beyond the offset. I think it's a counterclaim issue.

Similarly, with regard to the 2010 trophy items, the district court stated:

> [T]here is no counterclaim before the Court, there's no third party claim before the Court. If there is a contractual dispute there, it's just not raised in this case, and I have to decide this matter based upon the record that I have today. I find that there is no merit to that argument.

In summary, the district court rejected Jones's attempts to offset the amount he owed to Safaris Unlimited. The district court then orally granted summary judgment to Safaris Unlimited on all issues.

On October 27, 2014, the district court entered an amended judgment providing that Safaris Unlimited would recover $26,040.00 plus interest and $20,285.99 in attorney's fees for a total judgment of $52,005.37. Jones appeals to this Court.

## III. ISSUES ON APPEAL

1. Whether the district court erred by granting Safaris Unlimited's motion for summary judgment.

2. Whether either party is entitled to attorney's fees on appeal.

## IV. STANDARD OF REVIEW

> "On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [Idaho Rule of Civil Procedure] 56(c). "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Lapham v. Stewart*, 137 Idaho 582, 585, 51 P.3d 396, 399 (2002).

*Conner v. Hodges*, 157 Idaho 19, 23, 333 P.3d 130, 134 (2014).

6

## V. ANALYSIS

**A.      The district court improperly granted summary judgment to Safaris Unlimited.**

Jones contends that the district court erred by granting summary judgment to Safaris Unlimited. He submits three arguments in support of his position. First, Jones argues that he had a contract with HHK, not Safaris Unlimited. Second, Jones argues that the district court erroneously determined that he was not entitled to offset any amount owed with the value of trophy items from the 2010 and 2012 hunts. Third, Jones argues that Safaris Unlimited is acting as a debt collection agency subject to the ICAA.

In response to Jones's first argument, Safaris Unlimited contends that the invoice presented by the professional hunter and signed by Jones establishes a contract between Jones and Safaris Unlimited. In response to Jones's second argument, Safaris Unlimited contends that Jones failed to properly assert his offset claims because he failed to establish any obligation on behalf of Safaris Unlimited to deliver the trophy items. Finally, in response to Jones's third argument, Safaris Unlimited asserts that it is not attempting to collect the debt of another and, even if it was, it qualifies for an exemption to the ICAA.

"The elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co.*, 154 Idaho 269, 278, 297 P.3d 232, 241 (2013). Here, Safaris Unlimited's complaint unequivocally stated that it had an express or implied contract with Jones for the 2012 hunt. Safaris Unlimited made similar assertions in its memorandum in support of its motion for summary judgment. Neither the complaint nor summary judgment memorandum alleged that Safaris Unlimited had an agreement with HHK or an assignment of debt to enforce a contract between Jones and HHK. Instead, Safaris Unlimited contended throughout these proceedings that it sought payment for the 2012 hunt because it had an enforceable contract with Jones.

The existence of a contract is a genuine issue of material fact. "As to contract disputes at summary judgment, '[w]hen the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists.'" *Nix v. Elmore Cnty.*, 158 Idaho 310, 314, 346 P.3d 1045, 1049 (2015) (alteration in original) (quoting *Johnson v. Allied Stores Corp.*, 106 Idaho 363, 368, 679 P.2d 640, 645 (1984)). "'Formation of a valid contract requires that there be a meeting of the minds as

evidenced by a manifestation of mutual intent to contract.' Whether a contract has been formed 'is generally a question of fact for the trier of fact to resolve.'" *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 323, 297 P.3d 1134, 1140 (2013) (quoting *Thomas v. Thomas*, 150 Idaho 636, 645, 249 P.3d 829, 838 (2011)). In this case, contrary to Safaris Unlimited's argument on appeal, the purported signature of Jones at the bottom of an invoice is not sufficient to show any kind of contract between Jones and Safaris Unlimited for the 2012 hunt. Based upon the record at the time of summary judgment, Safaris Unlimited failed to prove the existence of a contract with Jones for the 2012 hunt. Due to the lack of evidence in the record, the district court erred by granting summary judgment to Safaris Unlimited for its breach of contract claim. The district court also erred by granting Safaris Unlimited's motion for summary judgment as to Jones's offset claims for the trophy items from the 2010 and 2012 hunts. An offset does not need to be pled as a counterclaim. We vacate the district court's grant of summary judgment to Safaris Unlimited and remand for further proceedings.

**B.    We decline to award attorney's fees on appeal at this time.**

Both parties request attorney's fees on appeal. Jones contends that he is entitled to attorney's fees under Idaho Code section 12-120(3). Safaris Unlimited contends that it is entitled to attorney's fees under Idaho Code sections 12-120(1) and 12-120(3). Idaho Code sections 12-120(1) and 12-120(3) both mandate an award of attorney's fees to the prevailing party. *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 157 Idaho 395, 401, 336 P.3d 802, 808 (2014); *Pinnacle Eng'rs, Inc. v. Heron Brook, LLC*, 139 Idaho 756, 761, 86 P.3d 470, 475 (2004). In this case, any determination of the prevailing party is "premature" because the Court does "not yet know who will prevail in this action." *Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 621, 226 P.3d 1263, 1268 (2010). Therefore, we vacate the district court's award of attorney's fees to Safaris Unlimited. At the conclusion of this litigation in district court, the court may in its discretion award attorney's fees to the eventual prevailing party and may consider, to the extent it deems proper in its discretion, an award attorney's fees for this appeal.

## VI. CONCLUSION

We vacate the judgment of the district court and remand for further proceedings. Costs, but not attorney's fees, to Jones on appeal.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.